IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA GULLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:08cv245-WC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Plaintiff Patricia Gully applied for disability insurance benefits under Title II of the

Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., and supplemental security income

benefits pursuant to Title XVI of the Act, 42 U.S.C. § 1381 *et seq*.  Her applications were

denied at the initial administrative level.  Plaintiff then requested and received a hearing

before an Administrative Law Judge (ALJ).  Following the hearing, the ALJ also denied the

claims.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision

consequently became the final decision of the Commissioner of Social Security

(Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is

now before the Court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c),

---

[1]     Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

both parties have consented to the conduct of all proceedings and entry of a final judgment

by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. #10);

Def.'s Consent to Jurisdiction (Doc. #11).  Based on the Court's review of the record and the

briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of
> Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not

---

[2]      A "physical or mental impairment" is one resulting from anatomical,
physiological, or psychological abnormalities which are demonstrable by medically acceptable
clinical and laboratory diagnostic techniques.

disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.

---

[3]     *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4]     *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

4

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-four years old at the time of the hearing before the ALJ.  (Tr. 31).
Plaintiff completed high school and three and a half years of college.  (Tr. 31).  Plaintiff's
past relevant work experience was as a fast food worker.  (Tr. 26, 32).  Following the
administrative hearing, and employing the five-step process, the ALJ found Plaintiff had not
engaged in substantial gainful activity since the alleged onset date of January 19, 2006 (Step
1).  (Tr. 21).  At Step 2, the ALJ found that Plaintiff suffers from the severe impairments of
"osteoarthritis of the knees, ankles, and shoulders; hypertension; and diabetes mellitus."  (Tr.
21).  The ALJ next found that other impairments alleged by Plaintiff[5] were not sufficiently
supported by medical evidence to be considered "significant work-related limitations . . . for
a continuous period of at least 12 months."  (Tr. 22).  The ALJ then found that Plaintiff "does
not have an impairment or combination of impairments that meets or medically equals one
of the listed impairments."  (Step 3) (Tr. 23).  Next, the ALJ found that Plaintiff retains the
RFC to "perform work at the medium exertional level with a restriction on climbing ladders,
ropes, or scaffolds; only occasional exposure to dangerous heights or machinery; and
avoidance of more than occasional exposure to direct sunlight."  (Tr. 23).  Given this level
of RFC, the ALJ determined that Plaintiff "is capable of performing her past relevant work
as a fast food worker."  (Step 4) (Tr. 26).  After consulting with a vocational expert to

---

[5]      These alleged impairments include "hiatal hernia, peptic ulcer disease, frequent
urination, foot blisters, back pain, and marijuana abuse."  (Tr. 22).

confirm that Plaintiff's past relevant work is not inconsistent with her given RFC (Tr. 43), the ALJ found that Plaintiff "has not been under a disability."  (Tr. 27).

## IV.    PLAINTIFF'S CLAIMS

Plaintiff alleges three discrete errors requiring reversal of the ALJ's decision: (1) "the ALJ failed to evaluate [Plaintiff's] residual functional capacity in accordance with Social Security Ruling 96-8p;" (2) "the ALJ failed to fulfill his duty to develop the record;" and (3) "the ALJ made multiple inaccurate statements that further prevent the support of substantial evidence." Pl.'s Brief in Support of Complaint (Doc. #13) at 9.  The Court will address each of Plaintiff's claims in turn.

## V.    DISCUSSION

### A.    *The ALJ's evaluation of Plaintiff's RFC in conjunction with SSR 96-8p.*

Plaintiff contends that, contrary to SSR 96-8p, "the ALJ failed to identify the functional limitations imposed by [Plaintiff's] medically severe impairments and assess her work-related abilities on a function-by-function analysis before determining that [Plaintiff] could perform medium work activity on a **sustained basis**."  Pl.'s Brief in Support of Complaint (Doc. #13) at 10 (emphasis in original).  Additionally, Plaintiff claims that the ALJ's finding that Plaintiff is capable of work at the medium exertional level despite her osteoarthritis of the lower extremities also runs afoul of SSR 96-8p because the ALJ purportedly failed to describe the evidentiary support for such conclusion and "failed to

provide a narrative discussion describing how the evidence supported his determination that [Plaintiff] could remain up on her affected extremities for most of the workday." *Id.* at 11. Plaintiff argues that these asserted violations of the standards set forth in SSR 96-8p require reversal of the ALJ's decision.

Defendant contends that, so long as it is evident the ALJ "did consider all of the evidence and found that it did not support Plaintiff's level of disability alleged," SSR 96-8p does not impose upon the ALJ a strict obligation to be "more specific and explicit in his findings" regarding the claimant's "work-related abilities on a function-by-function basis." Def.'s Brief in Support (Doc. #18) at 4.  Defendant also suggests that "Plaintiff's medical records do not offer much, if any, information related to any functional limitations associated with Plaintiff's impairments." *Id.* at 5.  Thus, it is asserted, there is little from which the ALJ could have concluded that Plaintiff's functional limitations precluded the performance of medium work beyond the restrictions noted by the ALJ in setting forth Plaintiff's RFC. Defendant also argues that, because the ALJ did properly recite and discuss the "very limited medical evidence of record," the ALJ was not required to give a "narrative discussion describing how the evidence supports" his conclusion that Plaintiff can perform medium work.

Social Security Ruling 96-8p recounts "the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC)." In pertinent part, it states as follows: "The RFC assessment is a function-by-function

assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p.  As noted by Defendant, in an unpublished decision the Court of Appeals for the Eleventh Circuit has held that an ALJ's failure to "more specific[ally] and explicit[ly]" set forth his findings with respect to a claimant's "functional limitations and work-related abilities on a function-by-function basis" is excusable where it is apparent the ALJ did "consider all of the evidence."  *Freeman v. Barnhart*, 220 Fed. App'x 957, 959-60 (11th Cir. 2007).  *See also Chavez v. Astrue*, 276 Fed. App'x 627, 627-28 (9th Cir. 2008) ("Chavez claims that the ALJ committed legal error by determining his mental residual functional capacity without performing a function-by-function assessment as required by Social Security Ruling 96-8p.  This claim fails because the ALJ considered and noted 'all of the relevant evidence' bearing on Chavez's 'ability to do work-related activities,' as required by the function-by-function analysis.") (internal citations omitted).

Thus, where the ALJ has "considered" all available relevant evidence pertaining to the claimant's functional limitations, the failure to "specific[ally] and explicit[ly]" discuss the ALJ's assessment of the claimant's "work-related abilities on a function-by-function basis" does not require reversal.  In this instance, it is evident that the ALJ did properly consider all relevant evidence.  The ALJ considered and discussed medical evidence from before the alleged onset date through shortly before the hearing date.  (Tr. 21-22). Specifically, the ALJ took note of the findings of Dr. Vyas, who conducted an examination of Plaintiff in April, 2006, and ultimately rendered a diagnostic impression including

osteoarthritis.  (Tr. 168).  The ALJ referred to Dr. Vyas's findings upon examination of Plaintiff's lower extremities.  The ALJ also considered Plaintiff's testimony about her impairments and her daily activities in determining Plaintiff's RFC.  (Tr. 22).  Only after discussing the relevant evidence pertaining to both actual and alleged severe impairments did the ALJ express Plaintiff's RFC in terms of a specific exertional level.  (Tr. 23).  Plaintiff points to no evidence overlooked by the ALJ in formulating Plaintiff's RFC.  Accordingly, it is evident that the ALJ gave adequate consideration to all "relevant evidence of [Plaintiff's] ability to do work-related activities" and any purported failure to explicitly assess the functional limitations on Plaintiff's work-related abilities on a function-by-function approach or provide a "narrative discussion" of the evidence supporting the ALJ's conclusion is not reversible error.

### B.    The ALJ's failure to further develop the record.

Plaintiff contends that the ALJ failed to adequately develop the record because "the ALJ's administrative determination that [Plaintiff] retained the residual functional capacity to perform the exertional requirements of medium work activity fails to enjoy the support from either a treating or examining physician."  Pl.'s Brief in Support (Doc. #13) at 13.  It appears that Plaintiff is asserting that this failure to order a "new medical source statement" is tantamount to the ALJ "act[ing] as both judge and physician."  *Id.*  Plaintiff concludes that, "[i]n furtherance of his duty to develop a full and fair administrative hearing, the ALJ should have sought such opinions from either [Plaintiff's] treating providers or Dr. Vyas before

9

making his RFC finding." *Id.* at 14.

Defendant maintains that the record evidence - both medical and, importantly, non-medical - supported the ALJ's RFC determination. Defendant highlights portions of the ALJ's opinion which evince his consideration of Plaintiff's inconsistent efforts to obtain treatment for her allegedly disabling impairments, the general lack of evidentiary support for Plaintiff's claims of such disabling impairments, Plaintiff's apparent success at treating certain her impairments with prescribed treatments, and Plaintiff's own testimony and written statements about her pain and her daily activities, including the consequences of her application for, and receipt of, unemployment compensation. Thus, Defendant concludes, the available evidence fully supported the ALJ's RFC determination.

"Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007); *see also Good v. Astrue*, 240 Fed. App'x 399, 404 (11th Cir. 2007) (rejecting claim that ALJ reversibly erred in failing to order a consultative examination because no treating or examining physician had recommended such an examination and the

record contained sufficient evidence to permit the ALJ's RFC determination).[6]

In this case, adequate evidence supported the ALJ's RFC determination such that he was not required to order any additional functional capacity evaluation or otherwise develop the record. The ALJ considered the detailed findings of Dr. Vyas's consultative examination (Tr. 165-68) and the opinion of the DDS physician who, based on available records, believed that Plaintiff suffered from no severe impairments. (Tr. 169). The ALJ also considered Plaintiff's own statements about her pain and found them only partly credible.[7] Additionally, the ALJ believed it pertinent that Plaintiff had only sought medical care on an inconsistent basis and that she had also applied for unemployment compensation after leaving work, thereby representing that she was not disabled and could return to work. Given the evidence available to the ALJ, as well as the lack of any medical professional's recommendation for an additional physical examination of Plaintiff, the ALJ was not required to further develop the record and his RFC determination is supported by substantial evidence. To the extent Plaintiff believes additional evidence could have affected the ALJ's RFC determination, she

---

[6]        Indeed, one of the cases relied upon by Plaintiff in alleging that the ALJ failed to properly develop the record, *Coleman v. Barnhart*, 264 F. Supp. 2d 1007, 1010 (S.D. Ala. 2003), found error, as in *Good*, based partly on the fact that no consultative physical capacities examination was ordered by the ALJ despite a specific recommendation for such by a consulting cardiologist. *See id.* at 1010-11. Despite including a lengthy excerpt from *Coleman* in her brief, Plaintiff failed to discuss this salient aspect of the decision and does not indicate any part of the record in which a physician similarly recommended a physical capacities evaluation for her. Nor does Plaintiff indicate that she requested such an examination or sought one from her own treating providers at any point during the administrative proceedings.

[7]        Plaintiff does not challenge the ALJ's credibility determinations.

has failed in her obligation to obtain such evidence in order to establish her entitlement to benefits.

### C.    *The ALJ's multiple allegedly inaccurate statements.*

Plaintiff contends "the ALJ made multiple inaccurate statements that further prevent the support of substantial evidence."  Pl.'s Brief in Support (Doc. #13) at 14.  Specifically, Plaintiff points to the ALJ's statements about Plaintiff's "need for frequent urination" and the severity of her diabetic condition as examples of such "inaccurate" statements.[8]  Notably, although Plaintiff concludes that the ALJ's allegedly "inaccurate" statements about these conditions somehow deprive his opinion of the support of substantial evidence, Plaintiff does not explain how any such inaccuracies ultimately compromise the ALJ's disability determination.  Defendant maintains that the ALJ's targeted statements are not inaccurate and that, even assuming some inaccuracy, they are harmless.

In rejecting Plaintiff's alleged frequent need for urination as a severe impairment, the ALJ remarked that any allegation about the seriousness of the condition was not "supported by the medical evidence in the record nor has any evidence been presented that such a

---

[8]    Plaintiff also includes an allegation about the ALJ's treatment of her foot blister condition in this portion of her brief.  However, Plaintiff does not indicate what the ALJ said about the condition that was "inaccurate."  Rather, she simply argues that the ALJ "summarily dismissed" the condition "without seeking clarification from a medical doctor so as to determine if that condition could be related to her diabetic condition/neuropathy."  Pl.'s Brief in Support (Doc. #13) at 15.  However, for the reasons stated *supra*, because the evidence in the record supported the ALJ's determination about the frequency and severity of the condition, the ALJ was not required to order an additional physician examination.

problem is unable to be cured by compliance with a medication regimen." (Tr. 23).   To illustrate the ALJ's purported inaccuracy, Plaintiff points to a single record, dated before the onset date of Plaintiff's alleged disability, in which the preparer noted Plaintiff's complaint of "occasional polyuria." (Tr. 142).  The ALJ was justified in concluding that this dated and isolated reference to Plaintiff's complaint of polyuria does not support a finding that the condition constitutes a severe impairment.   Moreover, Plaintiff has not alleged that the second component of the ALJ's statement - that there is no evidence that the condition can not be successfully treated with a "medication regimen" - is inaccurate.   When the two statements are read in context with each other it is apparent that the ALJ's decision not to find Plaintiff's alleged polyuria a severe impairment is supported by substantial evidence.

In expressing Plaintiff's RFC, the ALJ remarked that "there is no reference in the treatment notes to indicate that the claimant's diabetes has been incapable of being controlled with regular medical treatment, and the record contains no indication of end-organ damage, such as nephropathy, retinopathy, or kidney involvement." (Tr. 25).   Plaintiff points to specific medical records which, it is alleged, indicate that her diabetic condition was "anything but controlled."[9]   Plaintiff then concludes that "the ALJ's quoted language indicates that he does not adequately understand the symptoms and resulting limitations" of Plaintiff's diabetes.   However, the records highlighted by Plaintiff do not reveal that

---

[9]     Plaintiff does not, however, challenge the accuracy of the ALJ's statement about the apparent lack of "end-organ damage."

13

Plaintiff's condition was "uncontrollable."  Rather, they simply illustrate the continued monitoring of Plaintiff's condition and her health care providers' efforts to advise her on ways to treat her diabetes through diet, exercise, and medication.[10]  None of the records indicate that Plaintiff was unable to successfully moderate her condition despite her faithful adherence to the advice and treatments of medical professionals.  Thus, the ALJ's determination that the record does demonstrate that Plaintiff's diabetes is uncontrollable is supported by substantial evidence.

## VI.    CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

DONE this 3rd day of June, 2009.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

---

[10]      Indeed, one of the records cited by Plaintiff indicates that, in June, 2006, Plaintiff's abnormally high hemoglobin A1C reading had actually dropped from a higher reading in March, 2006.  *See* Tr. 171.  Although the lower measurement still exceeded normal levels, any improvement in her condition obviously detracts from her apparent contention that the condition is "uncontrollable."